

INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION®

**COMMERCIAL ARBITRATION RULES
DEMAND FOR ARBITRATION**

*For Consumer or Employment cases, please visit www.adr.org for appropriate forms.*

| |
|---|
| You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement. |
| Name of Respondent: Ionji Consulting, LLC |
| Address: 3856 Branch Creek Court |

| | | |
|---|---|---|
| City: Zionsville | State: Indiana | Zip Code: 46077 |
| Phone No.: (317) 670-8562 | Fax No.: | |

| |
|---|
| Email Address: fred@ionjiconsulting.com |
| Name of Representative (if known): F. Bradford Johnson |
| Name of Firm (if applicable): Johnson & Koeller |
| Representative's Address: 9795 Crosspoint Blvd |

| | | |
|---|---|---|
| City: Indianapolis | State: Indiana | Zip Code: 46256 |
| Phone No.: 317-842-5235 | Fax No.: 317-493-0060 | |

| |
|---|
| Email Address: fbjohnson@ijlegal.com |
| The named claimant, a party to an arbitration agreement which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration. |
| Brief Description of the Dispute:<br>Contractual dispute based upon a refusal to pay commissions to Claimant in the amount of $20,456.18 which are currently due and owing. Additional amounts may also be due to Claimant, however documentation of such payments are in the possession, custody, or control of Respondent. Respondent has refused to provide such documentation despite prior demands. Contract at issue (Strategic Alliance Agreement) is attached, which also provides agreement to arbitrate Pursuant to Paragraph 14. |
| Dollar Amount of Claim: $ 20,456.18 |
| Other Relief Sought: ☑ Attorneys Fees  ☑ Interest  ☑ Arbitration Costs  ☐ Punitive/Exemplary<br>☑ Other: Declaratory Relief with respect to the interpretation of the parties' Strategic Alliance Agreement |
| Amount enclosed: $ 925.00<br>In accordance with Fee Schedule: ☐ Flexible Fee Schedule  ☑ Standard Fee Schedule |
| Please describe the qualifications you seek for arbitrator(s) to be appointed to hear this dispute:<br><br>Experience in the management consulting industry and/or commission disputes would be desired, in addition to experience/qualifications related to resolution of commercial contractual disputes. |
| Hearing locale: Zionsville, Indiana<br>(check one) ☐ Requested by Claimant  ☑ Locale provision included in the contract |

| | | |
|---|---|---|
| Estimated time needed for hearings overall: 16 | hours or 2 | days |

*Please visit our website at www.adr.org if you would like to file this case online.
AAA Case Filing Services can be reached at 877-495-4185.*



**COMMERCIAL ARBITRATION RULES
DEMAND FOR ARBITRATION**

| | |
|---|---|
| Type of Business: | |
| Claimant: Catalyst Solutions Holdings, Inc. | Respondent: Ionji Consulting, LLC |

Are any parties to this arbitration, or their controlling shareholder or parent company, from different countries than each other?
No

Signature (may be signed by a representative):           Date: 12/4/2019

Name of Claimant: Catalyst Solutions Holdings, Inc.

Address (to be used in connection with this case): 1050 Glenbrook Way Suite 480-166

| City: Hendersonville | State: Tennessee | Zip Code: 37075 |
|---|---|---|
| Phone No.: 615-496-5615 | Fax No.: | |

Email Address: eweaver@catalystsolutionsinc.com

Name of Representative: Jeffrey M. Nye and Joshua M. Smith

Name of Firm (if applicable): Stagnaro, Saba & Patterson Co., LPA

Representative's Address: 2623 Erie Avenue

| City: Cincinnati | State: Ohio | Zip Code: 45208 |
|---|---|---|
| Phone No.: 513-533-6715 | Fax No.: 513-533-2999 | |

Email Address: jms@sspfirm.com ; jmn@sspfirm.com

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043. At the same time, send the original Demand to the Respondent.

*Please visit our website at www.adr.org if you would like to file this case online.
AAA Case Filing Services can be reached at 877-495-4185.*



## Ionji Consulting LLC and Catalyst

## STRATEGIC ALLIANCE AGREEMENT

This Strategic Alliance Agreement ("the Agreement") is entered into as of December 6th_, 2018, between Ionji Consulting LLC ("the Company") and Catalyst Solutions Holdings, Inc. ("the Affiliate"), collectively referred to as the "Parties".

1. <u>Mutual Cooperation.</u> Pursuant to the terms hereof, the Parties shall cooperate in the pursuit of mutual business opportunities with third parties related to the Parties' professional services capabilities. In addition, the Parties shall coordinate the delivery of professional services to certain clients.

2. <u>Use of Logos.</u> The Parties may include the name and logo of the other party in marketing material, proposals and on their website partner area with a brief description of the other party's capabilities as a partner.

3. <u>Duties, Term, and Compensation.</u> The Parties' duties, term of engagement, compensation and provisions for payment thereof shall be as set forth in the attached Schedule A, which may be amended upon mutual agreement and in writing from time to time.

4. <u>Confidentiality.</u> The Parties acknowledge that during the engagements they will have access to and become acquainted with various trade secrets, inventions, innovations, processes, information, records and specifications owned or licensed by the other party in connection with the operation of its business including, without limitation, the business and product processes, methods, customer lists, accounts and procedures. The Parties agree that neither party will disclose any of the aforesaid, directly or indirectly, or use any of them in any manner, either during the term of this Agreement or at any time thereafter, except as required in the course of this engagement.

5. <u>Conflicts of Interest; Non-hire Provision.</u> The Parties represent that they are free to enter into this Agreement and that this engagement does not violate the terms of any agreement between the Parties and any third party. Further, the Parties agree that, in rendering services, they shall not utilize any invention, discovery, development, improvement, innovation, or trade secret in which the Company or the Affiliate, respectively, does not have a proprietary interest. During the term of this agreement, the Parties shall devote as much of the productive time, energy and abilities to the performance of the duties hereunder as is necessary to perform the required duties in a timely and productive manner. For a period of one year following any termination, the Parties shall not, directly or indirectly hire, solicit, or encourage to leave the Company or the Affiliate, respectively, any employee, consultant, agent, or contractor of the other Party, or hire any such employee, consultant, agent, or contractor who has left the other Party's employment or contractual engagement within one year of such employment or engagement.

6. <u>Exclusive Providers.</u> Company will be used as the exclusive provider of Consulting Services and Affiliate will be used as the exclusive provider of Sales/Analytical Services.

Initials: _JM_ _____   Page 1 of 8

Scanned with CamScanner

7. <u>Right to Injunction.</u> The Parties hereto acknowledge that the services to be rendered under this Agreement and the rights and privileges granted to each Party under the Agreement are of a special, unique, unusual, and extraordinary character which gives them a peculiar value, the loss of which cannot be reasonably or adequately compensated by damages in any action at law, and the breach by either Party of any of the provisions of this Agreement will cause the other Party irreparable injury and damage. The Parties expressly agrees that in the event of a breach of any provision of this Agreement by a Party, the other Party shall be entitled to injunctive and other equitable relief without any requirement of posting bond. Resort to such equitable relief, however, shall not be construed to be a waiver of any other rights or remedies that the injured Party may have for damages or otherwise. The various rights and remedies of the Parties under this Agreement or otherwise shall be construed to be cumulative, and no one of them shall be exclusive of any other or of any right or remedy allowed by law.

8. <u>Merger.</u> This Agreement shall not be terminated by the merger, sale, or consolidation of either Party into or with any other entity.

9. <u>Termination.</u> Either Party may terminate this Agreement at any time by providing notice to the other Party six (6) months prior to such termination – stipulations in Clause 5 will still apply. Payment will continue for ongoing assignments through to completion. With a "For Cause" breach in the agreement, termination could be made immediately. Notwithstanding the foregoing, Company or Affiliate may terminate this Agreement immediately "For Cause.". For purposes of this Agreement, "For Cause" shall be defined to include the following occurrences; a. Failure to pay rightful commissions due, according to the Agreement. b. Willful misconduct or gross negligence on the part of one party that is injurious to the other party's reputation.; c. If either party to this Agreement becomes insolvent or commits an act of bankruptcy or takes advantage of any law for the benefit of debtors or a party's creditors, or if a receiver is appointed by either party, d. Death, disability or incapacitation of the CEO of either party, without a previous agreed do succession plan in place, agreed to in writing by both parties; e. If a party engages in fraud or criminal misconduct relevant to the operation of its business., f. Affiliate hiring, directly or indirectly, consultant(s) to work under Affiliate or other companies or entities owned or control by ownership of Affiliate; g. Company procuring outside clients directly and not through Affiliate that are not past clients or direct referrals from past clients – Company needs to share "leads" for new prospective consulting assignments with Affiliate.

10. <u>Independent Affiliate.</u> This Agreement shall not render either Party as an employee, partner, or agent of the other Party for any purpose. Each Party is and will remain an independent. The Parties shall be solely responsible for paying when due all income taxes, including estimated taxes, payroll taxes, national insurance and other taxes incurred as a result of or in connection with the compensation paid under this agreement. Neither Party shall have a claim against the other Party hereunder or otherwise for vacation pay, sick leave, retirement benefits, social security, worker's compensation, health or disability benefits, unemployment insurance benefits, or employee benefits of any kind.

11. <u>Insurance.</u> Both Parties will carry liability insurance (including professional liability insurance), relative to any service.

12. <u>Successors and Assigns.</u> All of the provisions of this Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, if any, successors, and assigns.

13. <u>Choice of Law.</u> The laws of the state of Indiana shall govern the validity of this Agreement, the construction of its terms and the interpretation of the rights and duties of the Parties hereto.

Initials: _____  _____   Page 2 of 8

Scanned with CamScanner

14. <u>Arbitration.</u> With the exception of any action for injunctive or equitable relief pursuant to Paragraph 7 above, any controversies arising out of the terms of this Agreement or its interpretation shall be settled in Zionsville, Indiana, located in Hamilton County, in accordance with the rules of the American Arbitration Association, and the judgment upon award may be entered in any court having jurisdiction thereof.

15. <u>Headings.</u> Section headings are not to be considered a part of this Agreement and are not intended to be a full and accurate description of the contents hereof.

16. <u>Waiver.</u> Waiver by one Party hereto of breach of any provision of this Agreement by the other shall not operate or be construed as a continuing waiver.

17. <u>Assignment.</u> Neither Party shall assign any of the rights under this Agreement, or delegate the performance of any of the duties hereunder, without the prior written consent of the other Party.

18. <u>Notices.</u> Any and all notices, demands, or other communications required or desired to be given hereunder by any Party shall be in writing and shall be validly given or made to another Party if personally served, or if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested. If such notice or demand is served personally, notice shall be deemed constructively made at the time of such personal service. If such notice, demand or other communication is given by certified or registered mail, such notice shall be conclusively deemed given upon the signed receipt of such certified or registered mail service.

    Notice to Company:
    Frederick P Melenchuk
    CEO
    3856 Branch Creek Court
    Zionsville, IN 46077

    Notice to Affiliate
    Edward J. Weaver
    CEO
    1050 Glenbrook Way
    Suite 480-166
    Hendersonville, TN 37075

    Any Party hereto may change its address for purposes of this paragraph by written notice given in the manner provided above.

19. <u>Modification or Amendment.</u> No amendment, change or modification of this Agreement shall be valid unless in writing and signed by the Parties hereto.

20. <u>Entire Understanding.</u> This document and any exhibit attached constitute the entire understanding and agreement of the Parties, and any and all prior agreements, understandings, and representations are hereby terminated and canceled in their entirety and are of no further force and effect.

21. <u>Unenforceability of Provisions.</u> If any provision of this Agreement, or any portion thereof, is held to be invalid and unenforceable, then the remainder of this Agreement shall nevertheless remain in full force and effect.

Initials: _____   _____   Page 3 of 8

Scanned with CamScanner

22. **Non-Disparagement.** The Parties agree not to disparage each other at any time both during the term of the agreement or upon termination of the agreement.

IN WITNESS WHEREOF the undersigned have executed this Agreement as of the day and year first written above. The Parties hereto agree that facsimile signatures shall be as effective as if originals.

By: _____*J. Mel____*_____

COMPANY: Ionji Consulting LLC, Frederick Melenchuk, CEO
3856 Branch Creek Court, Zionsville, IN 46077

By: _____[signature]_____

THE AFFILIATE: Catalyst Solutions Holdings, Inc, Edward Weaver, CEO
1050 Glenbrook Way, Suite 480-166, Hendersonville, TN

Initials: _____  _____   Page 4 of 8

Scanned with CamScanner

## SCHEDULE A



### DUTIES, TERM, AND COMPENSATION

**DUTIES:** Each Party will perform services for clients and work with the other Party to promote potential clients.

The Affiliate will be responsible for:
1. Securing work for consulting engagements to be entered into as part of this agreement.
2. Securing work for tax consulting engagements to be entered into as part of this agreement.
3. Ensuring that Consulting Services Agreements ("CSA's") are signed by the majority owner or CEO of the companies being engaged. The CSA will include, but not be limited to, (i) Scope of Work – a brief description of work to be performed, (ii) Hours – the estimated hours for the engagement, hourly rate, explanation of expenses, commencement date and time. The Affiliate will emphasize to the majority owner or CEO of the client(s) that the Company and the Affiliate have a strategic alliance, and that it will be the responsibility of the Company to complete the work outlined in the CSA, and collect payment for work completed. (See Exhibit A).
4. Collaborate with the CEO of the Company and the Project Director assigned by the Company to complete the work outlined in the CSA and 'pain points for the client', after CSA is signed, to help ensure a fluid and natural transition from sales to execution of the consulting engagement and writing of the Project Plan, which will be completed by the consultant assigned by the Company.
5. Working with the Company to fluidly transition Affiliate signed engagements.

The Company will be responsible for:
1. Securing and/or recruiting suitable consulting talent to complete the consulting engagement assignments. Every effort will be made to find and retain 'high caliber' consultants with a track record of running assignments to term.
2. Manage the consulting team towards the satisfactory completion of the deliverables outlined in the CSA.
3. Ensure payment for consulting engagements is collected, through the consultant assigned.
4. Ensure payment for tax consulting engagements is collected, through the consultant assigned.

**TERM OF AGREEMENT:** This engagement shall commence upon execution of the Agreement and shall continue in full force until terminated as described in Section 9 hereof.

Initials: _____   Page 5 of 8

Scanned with CamScanner

COMPENSATION: As full compensation for the services rendered pursuant to this Agreement, the Parties agree to compensation as set forth below and as specified in the CSA specific to that client engagement. Such compensation shall be paid to the other Party one week following the collection of client revenue.

<u>Hourly Rate:</u>
- Hourly rates will be as follows: $245/hour for companies $1,000,000 in size or less in terms of annual revenue; $295/hour for companies $1,000,001 to $10,000,000 in annual revenue; $345/hour for companies $10,000,001 to $50,000,000 in annual revenue; $395/hour for companies $50,000,001 plus in annual revenue.
- Exceptions may be made to these rates due to special circumstances and at the writing of the CSA, and at the acceptance by both the CEO of the Company and the CEO of the Affiliate.

<u>Terms:</u>
- The Company will retain 31% of consulting engagement revenue for consulting services performed and pay to the Affiliate 69% for all payments billed and collected. Collection of consulting fees from client(s) will be made at the end of each work week for ongoing assignments and payment made to the Affiliate within seven (7) days of receipt, to allow sufficient time for funds to clear.
In the event of a tax consulting engagement, which is separate and distinct from a consulting engagement, the Company will receive 8% of Affiliate's portion of any tax consulting engagements completed for assisting with the collection of tax documents, managing expectations with client as 'boots on the ground', and collecting on payments owed to the tax consultant assigned. This arrangement will only apply for assignments that consultants are actively involved in that have a tax component associated with them.

The remainder of the paper has been left blank intentionally

Initials: _____ _____ Page 6 of 8

Scanned with CamScanner

EXHIBIT A



# Consulting Services Agreement

The following is an agreement for consulting services work entered into between __xxx_____, located in Houston, TX, (hereinafter referred to as "Client") and Ionji® Consulting, LLC (hereinafter referred to as Ionji). The purpose of this document is to outline the working arrangement and fees and how we will work together.

<u>The Way We Work</u>
1. As it is essential that mutual understanding exist between Client and Ionji throughout the course of the engagement, Ionji will keep client informed of their activities and discussions on an ongoing basis and formally, once per week, in the form of a written review of progress – "plan our work, then work our plan."
2. Ionji will draft and present a written scope of work, or Project Plan, that will be mutually agreed upon. This will guide the direction of the engagement.
3. All matters pertaining to this agreement should be directed to Frederick P. Melenchuk, CEO of Ionji. All matters pertaining to the engagement, should be directed to__xxx___, who will serve as your Project Director. Other consultants and advisors may be brought in from time to time due to the value they can bring and their personalized expertise at Client and Ionji's discretion.
4. No express or implied warranty, of any general or specific results, shall apply to the work done under this agreement. Consulting services rely on many factors, including cooperation of the client staff and professional advisors in providing the required information and records, along with agreement to implement the strategies and recommendations developed during the course of the engagement – all matters over which Ionji has no control.
5. Client understands and acknowledges that Ionji performs consulting review, analysis, implementation and advisory services that may include recommendations for change. Further, Client is aware that Ionji does not practice law, or accounting, even though members of the Ionji team may be educated and/or licensed in these disciplines.
6. Client and Ionji agree that even though the minimum expectation for time on this assignment is __3-4_ months, client has the right to change the work deliverables, at any point, during this time, in concert with Ionji to ensure maximum impact and value is realized during the engagement, for Client.
7. Client reserves the right to terminate the agreement at the end of any business day by communicating such intent in writing to the CEO of Ionji and paying all fees and expenses due to date. Client understands that Ionji has built its business on trust and

Initials: _____ _____  Page 7 of 8

Scanned with CamScanner

    adding value and Ionji must prove its worth to you each and every day of the consulting arrangement.
8. Client understands that, on occasion, Ionji may recommend third party strategic partners that may have different contractual requirements than Ionji.

### Fees

1. Client agrees to pay all invoices for services rendered, in full, upon presentation.
2. Invoices for work on an approved Project Plan cover the following charges; (a) An hourly fee of Two Hundred Ninety-Five Dollars ($295) per man hour worked, as authorized below; (b) A per diem of Sixty ($60) dollars per day; (c) Travel expenses (airfare, ground transportation and hotel accommodations). Travel is not included in the hourly fee – every effort will be made to keep these expenses to a reasonable level. Payment by credit card is accepted, however a service and processing fee of 3% will be added for all credit card transactions.

### Employee Solicitation

1. Client agrees not to approach, for direct employment, the services of any person currently employed by Ionji, directly or indirectly, for a period of two (2) years from the date of this agreement.

It is agreed that this printed document embodies the entire working agreement of the parties relative to the management services rendered by Ionji; that there are no other understandings or arrangements, verbal or otherwise, existing between the parties; except as may be expressly set forth herein. Further, it is specifically agreed that, in the event of litigation, jurisdiction shall vest in Indiana, with Indiana law applying.

Authority is hereby granted to assign 1 Project Director(s) to work with Client.

Project Title: ____XXXXX_____

Project Commencement Date: ___xxxx____ at __8:00____ A.M.

Estimated Hours: _XXX_____ hours +/- 10%

The Parties agree and understand that the Parties signing this agreement is authorized and vested, to sign and bind the entity to this agreement.

| Ionji® Consulting LLC | Company Name: _____ |
|---|---|
| BY: _____ | BY: _____ |
| Print Name: _____ | Print Name: _____ |
| Title: _____ | Title: _____ |
| Date: _____ | Date: _____ |

©Copyright 2013 Ionji Management Consulting LLC. All Rights Reserved. (2 of 2 pages).

The remainder of the paper has been left blank intentionally

Initials: _____  _____  Page 8 of 8